NEISWANGER v. THE CITY OF KANSAS, *Appellant.*

1. **City of Kansas**: ORDINANCES: CITY MARSHAL: FEES. The common council of the City of Kansas, pursuant to the powers conferred by charter, provided by ordinance that the city officers should receive as full compensation for performing the duties of their respective offices, per annum, to be paid in quarterly installments, in warrants drawn on the city treasurer, as follows: "The city marshal, $100, and for making an arrest, $1; for serving a subpœna, twenty-five cents; for summoning a jury, $1; for serving an attachment, $1.50; and for serving a notice in condemnation cases, twenty-five cents." "Section 2. The officers entitled to fees by the preceding section will be entitled to receive the same when paid." *Held*, that these provisions did not mean that the marshal could in no case look to the city for the payment of the fee allowed him for making an arrest unless the fee was taxed as cost and paid by the party arrested to the city; that if such had been the intention it ought to have been clearly expressed in the ordinance; and that as without the modification made by the second section, he could only have received his compensation for arrests quarterly, this section was intended to authorize him to receive, in case of arrest, conviction and payment, by the party arrested, of the fine and costs, his compensation for the arrest at the time these costs were thus paid; but that his right to receive from the city the $1 fee for each arrest was absolute and unconditional.

2. ———; ——— : ——— : ———. Under an ordinance providing compensation only for making arrests, serving subpœnas, summoning jurors, and serving attachments and notices in condemnation cases, the city marshal was not entitled to compensation for serving notices to appear before the board of equalization.

3. ——— : ——— : ——— : ———. An ordinance provided for the killing of all dogs, not muzzled, found running at large contrary to the orders of the city physician; and authorized the mayor to appoint a person to kill such dogs, who should receive for each dog killed the sum of twenty-five cents. It appeared from the evidence that it was not the intention of the mayor to make such an appointment, but he instructed the marshal to kill the dogs, and to use the police force of the city for this purpose, and that the marshal issued to the police, each night, rations of poisoned meat, and that he cooked and cut up the meat and put poison in it, but the city paid therefor, and the police force distributed it. *Held*, that the police force was to be regarded as an agency of the city and not of the marshal, and that the marshal had not been appointed under the ordinance and was not entitled to receive the fees thereby provided, but a reasonable compensation, only, for his services.

*Appeal from Jackson Special Law and Equity Court.*—Hon.
R. E. Cowan, Judge.

Reversed.

J. *Brumback* for appellant.

*M. D. Treffen* and *Karnes & Ess* for respondent.

Norton, J.—Neiswanger was city marshal of appellant from the third Monday of April, 1873, to the third Monday of April, 1874. He sued to recover of the city $1,577.22 for services alleged to have been rendered by him during his term of office. He made eleven different classes of claims, to-wit: *First*, For serving notices in condemnation cases, serving subpœnas and summoning jurors. *Second*, For making 259 arrests for violating city ordinances, where the parties were not convicted before the recorder, nor fined, but discharged for want of proof or other cause, and paid no costs, $259. *Third*, For making 504 arrests for violating city ordinances, where the parties were convicted and fined by the city recorder, $504; and for committing such parties to the city work house, in default of payment of fines and costs, $378. *Fourth*, For making forty-eight arrests for violating city ordinances, where the parties were convicted and fined by the recorder, and appealed from his judgment, $48. *Fifth*, For serving 145 notices to parties to appear before the city board of equalization of taxes, $36.25. *Sixth*, for making two arrests, where the parties were taken from him under State warrants, $2. *Seventh*, For making forty-nine arrests for violating city ordinances, where the parties were convicted and fined by the city recorder, and by the latter permitted to leave the city without paying costs, called stays of execution to leave the city, $49. *Eighth*, For making three arrests where the parties were convicted and fined by the city recorder, and the common council remitted the fines, $3. *Ninth*,

For making four arrests for violating city ordinances, where the parties were convicted and fined by the city recorder, and the mayor of the city remitted the fines, $4. *Tenth*, For killing 650 dogs, $162.50. *Eleventh*, For serving eighteen notices on judges of election, for procuring six places for registration and holding election, and for $2.96 overpaid the city in settlement.

At the trial before the court, without a jury, the city admitted that respondent was entitled to recover for all proved in the first class, and he did not claim anything under the eleventh class, nor the $378 in the third class for committing persons to the work house. The contest was and is over the other classes, as to which the finding and judgment were for respondent.

The court gave for respondent nine instructions, viz: 2. For the 259 cases charged for in the account, where parties were arrested and discharged for want of sufficient evidence to convict, the court instructs that plaintiff is entitled to recover $259, if it believes from the evidence that the arrests were made as charged for.

3. For the 504 cases charged for, where parties had been arrested, tried and convicted, and had been sent to the work house, the court instructs that plaintiff is entitled to $504 for making the arrests in such cases, if the court believe from the evidence that such parties were arrested, tried, convicted and sent to said work house.

4. For the forty-eight cases charged for in the account, where parties had been arrested, tried and convicted, and had appealed, the court instructs that plaintiff is entitled to recover $48, provided it believes from the evidence the parties were arrested, tried and convicted as charged for.

5. For the 145 notices to appear before the board of equalization, the court instructs that plaintiff is entitled to recover $36.25, if it believes that such notices were served as charged for.

6. For the two cases charged for, where parties had

been arrested, and they were taken from the marshal on State warrant, the court instructs that plaintiff is entitled to recover $2, provided it believes from the evidence that said parties had been arrested as charged for.

7. For the forty-nine cases charged for in the account, where parties had been arrested, tried and convicted, and there had been a stay of execution by the recorder, the court instructs that plaintiff is entitled to recover $49, if it believes such arrests were made as charged for, and that said parties were tried and convicted.

8. For the three cases charged for, where parties had been arrested, tried and convicted, and the fines were remitted by the council, the court instruct that the plaintiff is entitled to recover $3, therefor, provided it believes from the evidence that such parties were arrested, tried and convicted.

9. For the eight cases charged for, where parties had been arrested, tried and convicted, and the fines were then remitted by the mayor, the court instructs that plaintiff is entitled to recover $8, provided it believes from the evidence that such parties had been arrested, tried and convicted as charged for.

10. For the killing of 650 dogs, as charged for in the account, the court instructs that plaintiff is entitled to recover $162.50, provided it believes from the evidence that the mayor instructed the said plaintiff to have the dogs killed, and that they were killed as charged for.

The city excepted to the giving of these instructions. It asked, and the court refused to give, instructions laying down the law differently, as to the nine classes of claims contested. Exception was saved as to such refusal.

It is not material to quote any of the refused instructions, except those as to the claim for killing dogs, which are as follows, viz:

10. The court must find for defendant as to charge in first quarter: To serving 650 dogs killed by order of mayor and city physician, $162.50.

11.    The court must not allow plaintiff anything for killing dogs, unless from the evidence it finds that he killed them, and then only a reasonable compensation, and not more than twenty-five cents a head for each dog killed by plaintiff.

12.    If from the evidence the court finds that some other persons than plaintiff killed dogs included in the number of 650 charged for by plaintiff, then it must find for defendant, as to all dogs killed by such person or persons.

13.    If from the evidence the court finds that the dogs charged for were killed by poisoned meat, and that the meat and poison were paid for by the city, and prepared for use to poison dogs by plaintiff alone, or plaintiff and some other officer, or officers, or employees of the city, and distributed where the dogs could and did get the same, by the policemen of the city, then no more should be allowed the plaintiff than a reasonable compensation for his services.

The case was submitted on petition, answer and proofs of respondent.    The instructions asked by the city, except the 11th, 12th and 13th, are to be considered in substance, that, as to each class of contested claims, on the pleadings and proofs adduced for respondent, the court should find for the city.    The court gave judgment for $1,302.41.    A motion for a new trial was overruled, a bill of exceptions setting out all the proof allowed, and the case duly appealed.

The determination as to whether error was committed by the court in giving and refusing instructions, (and which is the only question presented by the record for our consideration,) is dependent upon a construction of certain provisions of defendant's charter and ordinances, as follows:    It is provided in article 4, section 18 of the charter: " The city marshal shall, within the city, in all matters arising under the laws of this State, possess the same powers, and perform the same duties, as the constable of Kaw town-

ship. He shall execute and return all processes issued by the mayor, recorder or justices of the peace, under this act or any ordinance of the city, and shall execute and return all processes issued to him by either of said officers under the general laws of the State. He shall be subject to the orders of the mayor and common council, and may, with the consent of the common council, appoint one or more deputies, and shall perform such other duties as may be prescribed by ordinance, and for such service he shall receive such compensation as may be prescribed by ordinance."

City charter, article 3, section 1, clause 37, gives the common council of the city power by ordinance : "To fix the compensation of the city officers, and regulate the fees of all jurors, witnesses and others, for services rendered under this act, or under any ordinance; *Provided*, that the compensation of no officer of the corporation shall be diminished during his term of office." Mo. Laws 1870, p. 336, clause 37.

Pursuant to these statutory powers the common council, by ordinance of April 14th, 1873, before respondent's term of office began, fixed the compensation of all city officers. That ordinance provides, among other things : " Section 1. That from and after the third Monday of April, A. D. 1873, the officers of the city hereafter named shall receive as full compensation for performing the duties of the respective offices hereafter mentioned, per annum, to be paid in quarterly installments in warrants drawn on the city treasurer, and no more, as follows :" (After naming the mayor and thirteen other officers :) " The city marshal, $100, and for making an arrest, $1; for serving a subpœna, twenty-five cents; for summoning a jury, $1; for serving an attachment, $1.50; and for serving a notice in condemnation cases, twenty-five cents." " Section 2. The officers entitled to fees by the preceding section will be entitled to receive the same when paid." 　＊　　＊　　"All fees now taxed as costs against the defendant in the re-

corder's court according to law, and which had been paid
to any officer as part of his compensation, shall be taxed
in the same manner hereafter; but so much thereof so
taxed, to which officers are not entitled herein as fees, shall
be paid by the city marshal into the city treasury."

It is insisted by defendant's counsel that under the
above provisions the city marshal can in no case look to
1. CITY OF KANSAS: the city for the payment of the fee of $1 al-
ordinances: city
marshal: fees.    lowed him for making each arrest, unless the
fee taxed as cost has been paid by the party arrested to the
city, or, in other words, that the right of the marshal to
such fee can only be enforced against the party arrested,
upon his conviction, and if not collected from him it can-
not be charged against the city. This theory, we think,
cannot be maintained by any fair construction of the ordi-
nance. If it had been the intention of the city council in
fixing the compensation of the marshal to declare that he
should receive nothing for making an arrest except in cases
where the party arrested was convicted and paid the fine
and costs of the arrest, the intention ought to have been
clearly expressed in the ordinance. That such intention is
not so expressed in the ordinance, is manifest. It is con-
ceded by counsel that, if there was nothing but the 1st sec-
tion of said ordinance, the right to the dollar for each
arrest would be absolute and unconditional, and that the
city would be bound to pay, because its officer performed
the service officially for it. But it is contended that the
following words of the 2nd section " will be entitled to re-
ceive the same when paid," was intended to modify the 1st
section so as to make the absolute right of the marshal to
the fee of $1 contingent on its being paid by the person
arrested if convicted, fined and taxed with such fee as costs.

It will be observed that under the 1st section the com-
pensation of the city marshal for performing the service
mentioned therein, was only to be received by him in quar-
terly installments. One of the services required of the
marshal was to make arrests, for which he was entitled as

compensation to $1 for each arrest, and without a modifi-
cation of said section he could only receive his compensa-
tion for such arrests quarterly.    The language used in
section 2, *supra*, that " the officers entitled to fees by the
preceding section will be entitled to receive the same when
paid," only modifies section 1 so as to allow the city mar-
shal, in case of arrest, conviction of the party arrested and
payment of fine and costs by him, to receive his compensa-
tion for the arrest at the time the cost is thus paid, without
being required to pay the cost so received to the city treas-
urer and wait two or three months for the quarterly install-
ments, which, but for such modification of said section 1,
he would be compelled to do.    If the city council had in-
tended the modification of section 1 to have the scope con-
tended for by counsel, it could have been clearly expressed
in fewer words, by saying : but such officers shall not be
entitled to fees by the preceding section except in cases
where they are paid by the party convicted.    The modifi-
cation of section 1 only changes it in regard to the time
when the marshal may receive such fees as are paid by
the parties arrested who may be convicted.    We are, there-
fore, of opinion that instructions numbered two, three, four,
six, seven, eight and nine were properly given.

The exception taken to instruction number five, given
on behalf of plaintiff, was well taken, and ought to have
been sustained for the reason that no com-
pensation is provided for the performance of
such service as is mentioned therein.

Instructions eleven, twelve and thirteen, asked by de-
fendant and refused, ought to have been given.    These
instructions relate to the claim of plaintiff
for killing 650 dogs.    This claim is based on
an ordinance of June 18th, 1873, which, after providing
that the city physician may, for certain reasons therein
named, make and publish an order, prohibiting for a certain
time, all dogs from running at large unless muzzled, also
provides :  "All dogs found running at large, contrary to

the provisions of such order, shall be killed, and for that purpose the mayor is authorized to appoint one or more persons whose duty it shall be to kill all dogs found running at large unmuzzled, contrary to the published order of the city physician, and notifying the sanitary sergeant of the same, and for every dog killed, the person or persons performing the duty shall receive the sum of twenty-five cents." The mayor and plaintiff were the only witnesses who testified in regard to killing the dogs, and their evidence is as follows; the mayor said: "I instructed the marshal, Neiswanger, to use the police force in killing dogs running at large; simply instructed him to kill, or to have killed, the dogs; directed him to use the police force of the city to kill the dogs. I thought that a better way than to appoint a dog-killer. Nothing said about the pay, either as to marshal or police. I thought the dogs could be killed that way better than by a dog-killer appointed specially." The plaintiff testified, "that the mayor ordered me to kill the dogs. I issued to the police force each night rations of poisoned meat to be given to the dogs to kill them. The city paid for the meat and poison. I had the meat cooked and cut up, and put the poison with it. I issued it out to the police force from time to time." If, as the evidence indicates, it was the purpose of the mayor not to appoint the plaintiff to kill the dogs, but that the police force of the city should be used for that purpose, and plaintiff simply issued to the police in furtherance of such purpose meat and poison provided and paid for by the city, the plaintiff cannot be considered as having been appointed under said ordinance for the purpose of killing dogs, and the police force is to be regarded as an agency of the city and not of the plaintiff. For the error committed in giving instruction number five, for plaintiff, and refusing to give eleven, twelve and thirteen, asked by defendant, the judgment will be reversed and cause remanded, in which the other judges concur.